IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| HARLEMAN MANUFACTURING, LLC, | ) |
| Plaintiff -Counterdefendant, | ) |
| vs. | ) Case No.: 14-cv-03498-MDH |
| PENGO CORP., | ) |
| Defendant – Counterplaintiff | ) |
| and | ) |
| DANA SCUDDER, | ) |
| Defendant. | ) |

## ORDER

Before the Court is Defendant-Counter Plaintiff Pengo Corporation and Defendant Dana Scudder's Motion for Summary Judgment. (Doc. 85). For the reasons stated herein, the Court **DENIES** Defendant-Counter Plaintiff Pengo Corporation and Defendant Dana Scudder's motion. Plaintiff Harleman Manufacturing, LLC., has brought its cause of action against Pengo Corporation and Dana Scudder, alleging Breach of Contract (Count I); Specific Performance of the Contract (Count II); Negligent Misrepresentation (Count III); Fraudulent Misrepresentation (Count IV); Tortious Interference with a Lawful Business (Count V); Conversion (Count VI); Prima Facie Tort (Count VII); Trade Secret Misappropriation (Count VIII); Negligence (Count IX); and Promissory Estoppel (Count X). The multiple claims brought by Harleman arise out of the terms of alleged promises and agreements between Harleman and Pengo; including Pengo's alleged agreement to produce sample and production cast auger heads to Harleman; Pengo's

1

alleged agreement to purchase augers from Harleman; and the alleged mishandling of confidential information provided by Harleman to Pengo in order to work on the sample and cast production of augers.

## BACKGROUND

Harleman manufactures rock augers, which are a drilling tool, along with other tools and machinery. Harleman developed and patented a specific design of rock auger and sold those to its customers. At some point in time Harleman began looking to have its rock heads casted by a third party. Pengo, through its employee Dana Scudder, approached Harleman about its rock augers. One of the discussions between Harleman and Scudder involved Pengo creating sample augers and cast production augers for Harleman and specifically creating the two-dimensional drawings and three-dimensional models for Harleman. The drawings and models are then used to produce the tooling and casted auger heads.[1] Eventually the parties agreed to work together on the production and sale of Harleman's augers, however, the terms of that agreement are disputed and have led to the current lawsuit. One of the main disagreements is Harleman's contention that as part of its decision to work with Pengo on the production of casted auger heads, Pengo promised to purchase 2,500 to 3,500 augers per year from Harleman. Pengo denies the existence of an agreement to purchase augers, and further states it never promised nor agreed to purchase augers from Harleman.

The terms of the agreement were initially negotiated between Dana Scudder, the Vice President, Sales and Marketing, at Pengo and Ron Harleman, the owner of Harleman. The parties dispute the substance of the discussions between Scudder and Harleman. Harleman states

---

[1] The parties seem to agree that as part of the agreement, Harleman would send Pengo hand fabricated samples of auger heads to be reversed engineered to create drawings and 3-D models. However, the parties dispute the terms of the agreement with regard to the use and property rights of the drawings and 3-D models.

2

there were multiple discussions with Scudder regarding promises made by Pengo and that those discussions are reflected, in part, by email correspondence and deposition testimony submitted in opposition to summary judgment. Defendants argue there were only "preliminary discussions" between the parties and that no promises were made, nor agreements reached, to purchase augers from Harleman.

There are two "agreements" that were reduced to writing and executed by the parties. The first document, executed on January 8, 2010, is entitled "Mutual Confidential Disclosure Agreement." The parties agreed that certain information that is non-public and confidential in nature would be exchanged and was prohibited from disclosure. The confidentiality agreement further states:

> Recipient agrees to receive Confidential Information from the Disclosing Party during the term of this Agreement and to hold in confidence such Confidential Information, expect information that: (a) at the time of disclosure is in the public domain; (b) after disclosure, becomes part of the public domain by publication or otherwise, through no act of Recipient nor any agent or employee of Recipient; (c) Recipient can establish by competent proof was in its possession at the time of disclosure to Recipient and was not acquired, directly or indirectly, from the Disclosing Party; or ….

The second document, dated May 4, 2010, is entitled, "Commitment Form." The parties dispute the terms and meaning of the commitment form. Pengo argues the commitment form was a "contract to produce sample auger heads and a price quote for production auger heads." It further argues, it did not require Pengo to manufacture or Harleman to purchase any quantity of production auger heads, and even if it did, Harleman waived any breach of agreement by continuing with the project. Harleman argues the commitment form was entered into based on discussions, promises and agreements between the parties, arguing some terms or promises upon which it was based do not appear in the document. For example, Harleman contends at least one other agreement was supposed to be executed by the parties, but Pengo failed to deliver on those

3

promises or agreements despite Harleman's demands for their agreements to be reduced to writing.

The Commitment Form states, in part, the following: Harleman will pay for all tooling costs and maintenance costs. Then it states "pricing is listed below:…" The form then has a chart setting forth part nos., EAUs, descriptions and tooling costs. The "Form" then states:

> Samples (3 to 5 of each) to be provided in July 2010.
>
> Contract will run throughout the life of the patent. (Patent #7357200B2)
>
> Terms are 1% -10. Net 30 days.
>
> FOB Laurens, IA 50554
>
> Either party can cancel this agreement with 180 days written notice.
>
> Upon cancellation of said agreement, Harleman Mfg, LLC agrees to take all inventory on order, in Laurens, in transit, or in production relative to this agreement.
>
> Pengo agrees to hold pricing for 12 months from dated & signed agreement.
>
> Pengo agrees to negotiate future price increases annually, based on GPI and export conversion rates

Finally, the Form lists a chart of Cast Pricing, including part nos., EAUs, descriptions and cast pricing.

In early 2010, Harleman sent Pengo samples of ten different augers for reverse engineering. Pengo then created three-dimensional models and two-dimensional drawings of those augers. Harleman contends in May 2010 it received two-dimensional drawings but no 3D drawings or models. Harleman requested changes be made to the drawings it received in May 2010. From the record, it appears the parties relationship began to deteriorate after this time. The parties have submitted numerous exhibits that establish disputes between the parties over the

4

terms of their agreement.[2] For example, the parties disagree on what conversations took place with regard to the requested changes first made by Harleman in May 2010. The parties further dispute the requirements of the Commitment Form with regard to whether a purchase order was necessary for production of samples and the discussions between Pengo and its Chinese suppliers.[3] The parties dispute the process for sending the samples to China for production, the timing of production and what was actually provided pursuant to the agreement. The parties also dispute what information, if any, was confidential under their agreement.

Based on the significant disagreements between the parties regarding Pengo's obligations pursuant to the parties' "agreements," and Harleman's clear dissatisfaction with the arrangements, the relationship ended when Pengo terminated the agreement in May 2011. Even the termination of the parties' relationship is disputed, as Harleman alleges Pengo's termination of the agreement violated the agreement's notice provision.

**STANDARD**

Summary judgment is proper where, viewing the evidence in the light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Reich v. ConAgra, Inc.*, 987 F.2d 1357, 1359 (8th Cir. 1993). "Where there is no dispute of material fact and reasonable fact finders could not find in favor of the nonmoving party, summary judgment is appropriate." *Quinn v. St. Louis County*, 653 F.3d 745, 750 (8th Cir. 2011). Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v.*

---

[2] The fact that the parties dispute almost all the issues in this case is clearly reflected in the 231 numbered paragraphs of "material facts" contained in the briefing, most all of which are disputed.
[3] There is a factual dispute regarding Pengo's discussions with its Chinese foundry regarding production, price increases, confidential information and agreements.

5

*Catrett*, 477 U.S. 317, 323 (1986). If the movant meets the initial step, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To satisfy this burden, the nonmoving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

A question of material fact is not required to be resolved conclusively in favor of the party asserting its existence. Rather, all that is required is sufficient evidence supporting the factual dispute that would require a jury to resolve the differing versions of truth at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248-249. Further, determinations of credibility and the weight to give evidence are the functions of the jury, not the judge. *Wierman v. Casey's General Stores, et al.,* 638 F.3d 984, 993 (8th Cir. 2011).

## DISCUSSION

Defendants' motion for summary judgment argues Harleman's claims all fail for the same reason "there is no evidence to support them." Defendants further argue Harleman cannot provide any evidence of damages. For the reasons stated herein, this Court finds genuine issues of material fact exist regarding Harleman's claims.

**I. Breach of Commitment Form**

**A. Terms of Commitment Form**

Harleman claims Pengo breached the terms of the commitment form in numerous respects. In response, Pengo first argues the commitment form is a price quote, not a contract for production, and therefore, Harleman's claims fail as a matter of law.[4] In Missouri, the "essential

---

[4] The Court notes despite Pengo's argument that no valid contract was formed, Pengo's counterclaim includes a claim for Breach of Contract against Harleman.

6

elements of a valid contract include offer, acceptance, and bargained for consideration." *Johnson v. McDonnell Douglas Corp.*, 745 S.W.2d 661, 662 (Mo. 1988).

Here, the terms of the Commitment Form are disputed. Pengo argues the commitment form is merely a price quote. However, Harleman paid Pengo $43,584.00 for "tooling costs and maintenance costs" pursuant to the Commitment Form in exchange for some services rendered by Pengo. Further, the terms of the "commitment form" include the language "the contract will run throughout the life of the patent." The Court finds the terms of the executed commitment form are not entirely clear. Beyond the fact Harleman made an initial payment to Pengo for services, which was accepted by Pengo, it appears the other terms of the parties' agreement are disputed and unclear from the face of the document. For example, the parties dispute who owns the tooling after it was created (as more fully discussed herein) and the Court's review of the Commitment Form does not provide a clear answer to that dispute. Further, Harleman argues deadlines agreed to by the parties, and included in the commitment form, were not met. Harleman and Pengo also disagree regarding the agreement to produce samples versus the production of cast augers, along with numerous other alleged breaches as discussed herein.

Under Missouri law, "[a] contract is ambiguous only if its terms are susceptible to more than one meaning so that reasonable persons may fairly and honestly differ in their construction of the terms." *PlaNet Prods., Inc. v. Shank*, 119 F.3d 729, 731–32 (8th Cir. 1997)(internal citations omitted). However, "[a] contract is not ambiguous merely because the parties disagree over its meaning." *Id.* To determine whether a contract is ambiguous, the Court considers the whole instrument and gives the language in the contract their natural and ordinary meaning." *Id.* Parol evidence may be used to clarify an ambiguous contract, but cannot be used to create an ambiguity or to show that an obligation is other than that expressed in the written instrument. *Id.*

7

Here, the Court finds a genuine issue of material fact exists with regard to certain terms of the agreement reached by parties. However, the Court makes no determination regarding the merits of Harleman's claims, rather it finds there are questions of fact that must be resolved by a jury. The Court also finds the agreement between the parties is ambiguous and that appropriate parole evidence may be presented to the jury in resolving the questions of fact pertaining to the parties' agreements.

### B. Notice of Termination of Agreement

Harleman also claims Pengo violated the terms of the Commitment Form when it cancelled the agreement. The Commitment Form states, "either party can cancel this agreement with 180 days written notice." Pengo argues even though it initially only gave 90 days notice of its intent to terminate the agreement, it "corrected that mistake." Harleman disagrees that the "mistake" was corrected, and argues the 90 day notice provided by Pengo, along with the other terms given in that notice, violated the terms of the agreement. The Court finds whether Pengo's notice of cancellation violated the terms of the agreement is a factual issue for a jury to determine.

### C. Harleman's Alleged Waiver of any Breach of the Commitment Form

Finally, Pengo argues Harleman waived its claims of any breach of the agreement by continuing with the project despite knowledge of Pengo's alleged breaches. However, again the record before the Court establishes there is a question of fact regarding this claim. Harleman has provided deposition testimony and e-mail exchanges in support of its argument that it never waived its rights under the terms of the agreement. While the Court makes no findings regarding whether Harleman may prevail on its claims for breach of the commitment form, the Court finds there are certainly questions of material fact that should be presented to a jury for determination.

8

## II. Confidential Information

Harleman brings several claims that include, but are not limited to, the allegation that Pengo breached the terms of the confidentiality agreement.[5] Pengo moves for summary judgment on all those claims arguing it never disclosed any confidential information because: 1) Harleman did not provide Pengo with any confidential information; and 2) there is no evidence of disclosure.[6]

Pengo's first argument is based on the confidentiality agreement's language regarding "public domain." The agreement states: "recipient agrees to receive Confidential Information from the Disclosing Party during the term of this Agreement and to hold in confidence such Confidential Information, expect information that: (a) at the time of disclosure is in the public domain …" Pengo argues any information it received from Harleman was information that exists in the public domain. Specifically, Pengo argues the samples of Harleman's auger heads are not confidential. Pengo argues what it received from Harleman was the same product Harleman was already selling to its customers. Further, Pengo claims because Harleman obtained a patent on the auger heads the design was also publically available.

In response, Harleman argues its claims based on the confidentiality agreement go beyond the auger heads themselves. Harleman claims Pengo entered into the confidentiality agreement in order to gain access to Harleman's confidential information, including proprietary

---

[5] The confidentiality agreement can be found in Harleman's claims for Breach of Contract (Count I); Specific Performance of the Contract (Count II); Tortious Interference with a Lawful Business (Count V); Prima Facie Tort (Count VII); Trade Secret Misappropriation (Count VIII); and Negligence (Count IX).

[6] Pengo does not specifically brief the elements of the separate causes of action raised by Harleman based, in part, on the confidentiality agreement. For example, Pengo's motion for summary judgment does not address the elements of Harleman's claims of Specific Performance of the Contract (Count II); Tortious Interference with a Lawful Business (Count V); Prima Facie Tort (Count VII); Trade Secret Misappropriation (Count VIII); or Negligence (Count IX).

and trade secret information. This information, according to Harleman, includes the methods of creating and designing the auger heads, the castings, the toolings that were created, as well as other designs and models based on Harleman's methods. Further, Harleman contends that the 3D drawings and models created by Pengo were developed from the information provided by Harleman and are covered by the confidentiality agreement. Harleman contends Pengo refused to produce that information to Harleman but produced it to several foundries in China. Harleman argues under the agreement Pengo was not authorized to produce that information without express written permission. Finally, Harleman contends it provided assistance and input, that only it could provide, to Pengo's engineering department in order for Pengo to create the 3D drawings.

The parties disagree about what information was provided to the Chinese foundries, if any, and if so whether any such information was in fact confidential. The Court finds that Harleman has provided enough evidence to create a genuine issue of material fact regarding what information may have been disclosed and whether any such information is confidential under the terms of the confidentiality agreement. Therefore, the court denies Pengo's motion for summary judgment on the issue of "any alleged mishandling of Harleman's confidential information" as set forth in Pengo's brief.[7]

---

[7] Again, the Court previously noted Pengo has not specifically moved for summary judgment on some of the specific counts contained in Harleman's complaint. As such, the Court finds as a general ruling that there exists a question of fact for a jury regarding the confidentiality agreement and the information covered by that agreement. However, with regard to the specific counts contained in Harleman's Complaint some of those claims were not specifically raised by Pengo in its motion for summary judgment and therefore are not addressed by the Court at this time.

10

### III. Negligent and Fraudulent Misrepresentation

Harleman's claims against Defendants are based on alleged statements made by Pengo's employees, including Scudder, to Harleman prior to entering into their agreement. Harleman claims Defendants failed to exercise reasonable care, and intentionally provided misinformation, to induce Harleman into a transaction with Pengo.

The elements of a claim for negligent misrepresentation are: (1) the speaker supplied information in the course of his business; (2) because of a failure by the speaker to exercise reasonable care, the information was false; (3) the information was intentionally provided by the speaker for the guidance of a limited group of persons in a particular business transaction; (4) the listener justifiably relied on the information; and (5) due to the listener's justified reliance on the information, the listener suffered a pecuniary loss. *Ryann Spencer Group Inc. v. Assurance Company of America,* 275 S.W.3d 284, 288 (Mo. App. 2008). Simply put, to maintain a claim for negligent misrepresentation, plaintiff must establish that due to a failure to exercise reasonable care, defendants made false statements that plaintiff justifiably relied upon to his detriment. *Baum v. Helget Gas Products, Inc.,* 440 F.3d 1019, 1023 (8th Cir. 2006); *citing, Collins v. Mo. Bar Plan,* 157 S.W.3d 726, 734 (Mo. App. 2005). "A negligent misrepresentation claim cannot arise solely from evidence that the defendant did not perform according to a promise or statement of future intent." *Id.* at 1023-1024.

To state a claim for fraudulent misrepresentation, plaintiff must prove (1) a false, material representation; (2) the speaker's knowledge of its falsity or his ignorance of its truth; (3) the speaker's intent that it should be acted upon by the hearer in a manner reasonably contemplated; (4) the hearer's ignorance of the falsity of the representation; (5) the hearer's reliance on its truth; (6) the hearer's right to rely thereon; and (7) the hearer's consequent and proximately caused

11

injury. *Bohac v. Walsh,* 223 S.W.3d 858, 862-863 (Mo. App. 2007). "It is well-settled that an unkept promise does not constitute actionable fraud unless it is accompanied by a present intent not to perform." *Urologic Surgeons, Inc. v. Bullock,* 117 S.W.3d 722, 726 (Mo. App. 2003). Further, "statements, representations, or predictions about an independent third party's future acts do not constitute actionable misrepresentation." *Massie v. Colvin,* 373 S.W.3d 469, 472 (Mo. App. 2012).

Defendants' argument in response to Harleman's claims is that "neither Pengo, nor Mr. Scudder, ever promised to deliver production auger heads by any date, let alone by November 2010." Defendants argue they cannot be held liable for promises that were never made. However, as set forth in Harleman's petition and evidence submitted in opposition to summary judgment, Harleman argues Defendants did in fact make promises to Harleman, some of which may or may not have been reduced to writing. Harleman further claims these representations were made in order to harm Harleman's business, induce it to enter into an agreement, and further to induce it to provide confidential information to Pengo.

Here, based on the extensive record before the Court, and the multiple filings of exhibits, statements of "fact" and other evidence, the Court finds Harleman has provided enough evidence to create a question of material fact with regard to whether Scudder, or others acting on behalf of Pengo, exercised reasonable care or intentionally provided misinformation in making the statements about the terms of the agreement, including Pengo's duties under the commitment form and confidentiality agreement.

    **IV.**    **Conversion**

"Conversion is the unauthorized assumption of the right of ownership over the personal property of another to the exclusion of the owner's rights." *Kennedy v. Fournie*, 898 S.W.2d

12

672, 678 (Mo. Ct. App. 1995) (internal citation omitted). In Missouri, "conversion may be proved in one of three ways: (1) by showing a tortious taking, (2) a use or appropriation by the defendant indicating a claim or right in opposition to the owner, or (3) a refusal to give up possession on demand. *Id.* In order to prevail, Harleman must show it had a right of property in, and a right to the immediate possession of the property, concerned at the alleged date of conversion. *Id.* (citation omitted). Conversion is appropriate if a defendant rightfully assumed possession, but then wrongfully retained possession. *Id.*

Harleman's claim for conversion is based on the 3D drawings and tooling. The dispute between the parties on this issue is basic: Harleman claims that it paid Pengo to create the 3D drawings and tooling and therefore it is entitled to ownership of the drawings and tooling based on its payment for them to be created. On the other hand, Pengo argues it created the 3D drawings and tooling and therefore it is entitled to ownership of that property. The Commitment Form does not specifically address ownership of the tooling or drawings. Rather, the commitment form merely states Harleman will pay for all tooling costs and Harleman did in fact pay Pengo at least $43,584.00.

Further, it appears there were conversations between the parties, including a request from Harleman, that a written agreement regarding the tooling be executed. Harleman alleges it made an attempt to obtain its "property," i.e. the 3D drawings and tooling, but Pengo would not produce it. The Court finds there is a factual dispute regarding the ownership of the drawings and tooling and denies summary judgment on this claim.

## V. Promissory Estoppel

In order to prevail on a claim for promissory estoppel Plaintiff must establish the following elements: (1) a promise; (2) that the promisee detrimentally relied on the promise; (3)

13

that the promisor could reasonably foresee the precise action the promisee took in reliance; and (4) the resulting injustice can only be avoided by enforcement of the promise. *Prenger v. Baumhoer*, 939 S.W.2d 23, 26 (Mo. Ct. App. 1997). Harleman argues Pengo, through Mr. Scudder, promised to purchase 2,500-3,500 augers per year from Harleman. In reliance on that "promise," Harleman argues it entered into the agreement with Pengo based on the conversations with Scudder.

Defendants argue the terms of the alleged "promise" are indefinite and generalized and that any reliance on the alleged "promise" was unreasonable. In turn, Harleman argues the "promise" was more than one conversation and the record reveals disputed material facts regarding what discussions took place with regard to Harleman's reliance on Defendants' "promises."

For the reasons stated throughout this Order, the Court finds there are questions of fact regarding the discussions between the parties. Further, the Court finds whether Harleman was reasonable in relying on any such discussions is also a question of fact. Finally, whether Harleman relied to its detriment based on any of Defendants' alleged promises is also disputed. As a result, summary judgment is denied.

## VI. Damages

Finally, Defendants argue they are entitled to summary judgment because Harleman cannot establish it is entitled to damages as a result of its contract or tort claims. First, Defendants argue the expert's opinion on lost profits is pure speculation. Second, Defendants argue Harleman's expert is unreliable and deficient and her testimony should not be allowed to support an award. However, the Court has ruled Harleman's expert will be allowed to testify. Defendants will have the opportunity to try and establish through cross-examination and

14

Case 6:14-cv-03498-MDH   Document 144   Filed 08/30/16   Page 14 of 15

evidence that Harleman cannot make a claim for lost profits. However, the Court does not find that this is an issue for summary judgment. Further, Defendants argue Harleman cannot establish it was damaged by disclosure of confidential information because it cannot prove that claim. For the reasons stated herein, the Court has already determined that the issue of whether there was a breach of the confidentiality agreement is a factual question for a jury.

## DECISION

Wherefore, for the reasons stated herein, the Court **DENIES** Defendants' Motion for Summary Judgment. The Court will issue a separate Order setting the case for trial and establishing the pre-trial deadlines.

**IT IS SO ORDERED.**

Date: August 30, 2016

                                           _/s/ Douglas Harpool_
                                           Douglas Harpool
                                           United States District Judge